UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEVI SMITH,

       Petitioner,                                          Civil Action No.14-CV-10969
                                                               HON. BERNARD A. FRIEDMAN

v.

KENNETH ROMANOWSKI,

       Respondent.
_____/

**<u>OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, GRANTING A CERTIFICATE OF APPEALABILITY WITH RESPECT TO PETITIONER'S THIRD CLAIM, AND GRANTING PERMISSION FOR LEAVE TO APPEAL IN FORMA PAUPERIS</u>**

        Devi Smith, ("Petitioner"), was convicted in Wayne County Circuit Court of two counts of first-degree murder, Mich. Comp. Laws. § 750.316(1)(a), two counts of torture, Mich. Comp. Laws. § 750.85, and possession of a firearm during the commission of a felony, Mich. Comp. Laws. § 750.227b. Petitioner was sentenced to life imprisonment for the murder convictions, twenty-three to fifty years for the torture convictions, and a consecutive two-year term for the firearm conviction.

        The amended habeas petition raises three claims: (1) petitioner's statement to police should have been suppressed when he read aloud the waiver of rights form incorrectly and the interrogating officer failed to correct the mistake, (2) the trial court erroneously admitted the recording of a 911 call made by the victims' young daughter, and (3) petitioner was denied the effective assistance of trial and appellate counsel. The petition will be denied because the claims are without merit. The Court will grant petitioner a certificate of appealability with respect to his

1

third claim, deny a certificate of appealability with respect to his other two claims, and grant leave to proceed *in forma pauperis* on appeal.

## I. BACKGROUND

This case involves the March 1, 2010, murder of Monica Botello and Percil Carson at their Detroit home. Petitioner was tried twice. After the first trial, petitioner's co-defendant, Derrick Smith, was convicted of murder, torture, and felony-firearm. The jury was unable to reach a verdict on the charges against petitioner.

At petitioner's second trial, evidence was presented that he and Derrick went to the victims' residence under the pretense of completing a drug transaction. As the money was being counted, Derrick and petitioner drew handguns. Petitioner ordered Botello and her two young daughters into a bathroom at gunpoint. Botello was later taken out of the bathroom, and the men bound her and Carson's wrists with duct tape. Carson begged for his life, pleading with the two men that he had a family. Derrick and petitioner directed Botello and Carson into the basement, where they were laid across a couch and their mouths duct-taped. Carson was shot once in the front of the head, and Botello was shot once in the back of the head.

Meanwhile, one of Botello's daughters in the bathroom, eight-year-old Tayonna, heard Carson's pleas, her parents forced into the basement, and gunshots. She called 911 after Derrick and petitioner left the house. Tayonna described the two perpetrators to the operator and said a man, who she later identified as petitioner, forced her into the bathroom at gunpoint. The day after the murders, Tayonna again described the perpetrators. She also later picked petitioner at a photographic identification procedure. Petitioner refused to participate in a live line-up.

Another witness, Shantell Crankfield, also picked petitioner out of a photographic identification array as the man who was with Derrick and Carson at the house on the evening of the murders. Crankfield left shortly before the incident occurred.

Petitioner was apprehended about six months after the crime. In his statement to police, he admitted to being in the victims' house, but he claimed that he did nothing to aid Derrick, who he claims was solely responsible for binding, robbing, and killing the two victims. Petitioner's defense was that Derrick called him and asked him to come to Carson's house to facilitate a drug deal. When petitioner saw that Derrick planned to rob Carson, he escorted the children to the bathroom for their own protection and then left the premises. The prosecutor relied on Tayonna's statements and testimony that petitioner was armed with a gun and forced them into the bathroom to discredit petitioner's version of events, and she asserted that petitioner's conduct at a minimum constituted aiding and abetting Derrick's crimes.

Based on this evidence, the jury found petitioner guilty of the offenses indicated above. Following his conviction and sentence, petitioner filed a claim of appeal in the Michigan Court of Appeals. His appellate brief raised the following claims:

> I. [Petitioner] did not voluntarily, knowingly and intelligently waive his constitutional rights when he did not read the waiver of right's form correctly and the interrogator failed to correct him.
>
> II. The trial court admitted irrelevant and prejudicial evidence in violation of Michigan Rules of Evidence 401 and 403 when it admitted Tayonna Botello's 911 call.

The Michigan Court of Appeals affirmed petitioner's conviction in an unpublished opinion. *People v. Smith*, No. 306574 (Mich. Ct. App. Nov. 27, 2012). Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims as in the Michigan Court of Appeals. The Michigan Supreme Court denied the

application because it was not persuaded that the questions presented. *People v. Smith*, 829 N.W.2d 203 (Mich. 2013).

Petitioner then filed his federal habeas petition along with a motion to stay the petition so he could return to the state court to exhaust a claim of ineffective assistance of counsel claim. The Court granted petitioner's motion to stay.

Petitioner then returned to the state trial court and filed a motion for relief from judgment, raising claims regarding the effectiveness of his trial and appellate counsel. Petitioner claimed this his trial counsel was ineffective for failing to call two defense witnesses, Jeffery Haugabook and Nina Funchess, who testified at the first trial. Haugabook testified at the first trial that Derrick was with someone other than petitioner, a different "young un," at a Wal-Mart when the robbery was discussed and planned. Funchess also testified at the first trial that she saw Derrick both before and after the crimes, but petitioner was not with him.

On September 16, 2014, the trial court denied the motion for relief on the merits, finding that petitioner's counsel did not perform deficiently, and that petitioner was not prejudiced by his counsel's performance in light of the strength of the evidence indicating his guilt. *See* Wayne County Circuit Court Sept. 16, 2014, Opinion and Order. The Court also found that petitioner failed to demonstrate actual prejudice as required under Michigan Court Rule 6.508(D)(3)(b). *Id.*

Petitioner then filed an application for leave to appeal in the Michigan Court of Appeals. The Michigan Court of Appeals denied the application for failure to establish entitlement to relief under Michigan Court Rule 6.508(D) and for "failure to establish that good cause should be waived." *People v. Smith*, No. 326534 (Mich. Ct. App. June 2, 2015). Petitioner

applied for leave to appeal this decision in the Michigan Supreme Court, but was also denied relief under Rule 6.508(D). *People v. Smith*, 878 N.W.2d 870 (Mich. 2016).

Petitioner thereafter filed an amended petition and motion to life the stay, which the Court granted. Respondent responded, and the matter is now ready for decision.

## II. STANDARD OF REVIEW

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

The Michigan Court of Appeals decision is contrary to "clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)).

"[T]he 'unreasonable application' prong of [the statute] permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) quoting *Williams*, 529 U.S. at 413. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

5

Habeas corpus review "is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Richter*, 562 U.S. at 103. To obtain habeas corpus relief, petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## III. DISCUSSION

### A. Admission of Petitioner's Statement to Police

Petitioner first asserts that his statement to police was erroneously admitted at trial because he misstated his *Miranda* rights when he was asked to read the notice of rights form, and the interrogating officer failed to correct his misstatement. The Michigan Court of Appeals rejected this claim on the merits, and respondent contends that its decision was not contrary to, and did not involve an unreasonably application of, clearly established Supreme Court law.

Under clearly established Supreme Court law, a suspect may waive his *Miranda* rights provided the waiver is made knowingly and voluntarily. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966); *Moran v. Burbine*, 475 U.S. 412, 421 (1986). A waiver is knowing if the suspect understands that he may "choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time." *Colorado v. Spring*, 479 U.S. 564, 574 (1987). A waiver is voluntary if the suspect's decision to talk is "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran*, 475 U.S. at 421. A court assesses whether a waiver is knowing and voluntary "primarily from the perspective of the police," asking whether the officers had "reason to believe that [the suspect] misunderstood" his rights or felt compelled to waive them. *See Garner v. Mitchell*, 557 F.3d 257, 263 (6th Cir.

6

2009). Respondent bears the burden of establishing a valid waiver by the preponderance of the evidence. *See Lego v. Twomey*, 404 U.S. 477, 489 (1972).

After reciting the controlling constitutional standard, the Michigan Court of Appeals rejected petitioner's claim on merits as follows:

> Detective Derryck Thomas testified that defendant was interviewed once on September 3, 2010. The interrogation video showed that defendant was given the advice of rights form, and that he read the first right out loud. Defendant stated, "I have the right to remain silent, and that I do have the right to answer any questions put to me." Thomas then told defendant to initial the form to indicate that he had read the form. Defendant initialed the form next to the right he read aloud. Defendant looked at the form for several more seconds, and then Thomas asked him if he had read the second right and told him to initial the second right. Defendant then initialed the form next to the second right. Thomas told defendant to finish reading the form. After about 30 seconds, Thomas asked if defendant was stuck. Thomas then read the rest of the form aloud to defendant and defendant signed the form. Based on that record, the court did not clearly err in its factual findings.
>
> At the hearing, defendant testified that Thomas told him that he would only be a witness in the homicide case, and never told him that he was a suspect. Defendant also testified that Thomas gave him the advice of rights form, but defendant did not read the rights to himself or aloud. However, the trial court relied on the interrogation video for its findings, and did not rely on defendant's testimony. "Deference is given to a trial court's assessment of the weight of the evidence and the credibility of the witnesses." *Gipson*, 287 Mich. App. at 264.
>
> Based on the trial court's factual findings, defendant voluntarily, knowingly, and intelligently waived his Fifth Amendment rights. Defendant could read, had a high school education, and had completed some college. Defendant was given his rights, and he read each right or had the rights read to him. Defendant read the first right out loud, and stated, "I have the right to remain silent, and that I do have the right to answer any questions put to me." The second portion of defendant's statement was incorrect. However, defendant was required to be warned that he had the right to remain silent, that anything he said could be used against him in a court of law, that he had the right to the presence of an

7

> attorney, and that if he could not afford an attorney one would be appointed for him before any questioning if he so desired. *McBride*, 273 Mich. App. at 250. Defendant clearly read "I have the right to remain silent," out loud, without mistakes. Therefore, defendant's misstatement fails to establish that defendant did not knowingly waive his rights. Defendant read all his rights or had the rights read to him, and he acknowledged that he had an opportunity to read his rights that he understood them. Therefore, defendant voluntarily, knowingly, and intelligently waived his Fifth Amendment right after receiving his *Miranda* warnings, and he is not entitled to a new trial.

*Smith*, No. 306574, at *2–3.

28 U.S.C. § 2254(e)(1) states that a state court's factual determination is presumed correct, and the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. *Combs v. Coyle*, 205 F.3d 269 (6th Cir. 2000). Consequently, if the state court has based its denial of relief on factual findings made by the state trial court, a federal court's review is extremely limited.

Here, the state trial court's factual findings and the Court of Appeals's affirmation are amply supported by the record and have not be rebutted by clear and convincing evidence. In DATE, an evidentiary hearing on the validity of petitioner's waiver was held in state court. The testimony and interrogation video recording presented confirmed that petitioner was properly informed of his *Miranda* rights, understood those rights, and voluntarily waived them.

Testimony showed that petitioner was 28 years old, finished high school and attended a semester of college. The interviewing officer asked him to read one of his rights aloud to ensure that petitioner could read; petitioner was then given an opportunity to read the other rights to himself before the officer asked if he understood and waived them. Rule 5 Materials Ex. 6, pp. 13–16.

The state court found that in the recording, petitioner reviewed the form for two minutes before waiving his rights and agreeing to talk, and that he acknowledged his opportunity to read the form and ask questions about it. *Id.* 65–66. At the hearing, and contrary to the recording, petitioner testified that he did not read any right aloud, the officer did not read any rights to him, and he did not read the rights to himself. *Id.* 52–53. Finally, contrary to petitioner's assertion that the officer told him that he was only a witness, Detective Thomas testified that he told petitioner that petitioner was a suspect. *Id.* at 22. This false testimony provided an adequate basis for trial court to discredit petitioner's testimony.

Indeed, the record shows that petitioner understood his rights. In the recording, petitioner accurately stated aloud his right to remain silent; there was no confusion regarding his rights, nor did he ask the officer any questions when prompted. That petitioner omitted two words while reading aloud does not mean that he misunderstood his rights.

Based on the foregoing, the prosecution presented adequate evidence to support the trial court's finding that petitioner's waiver of his *Miranda* rights was voluntary and knowing. Accordingly, this claim was reasonably adjudicated by the state courts, and petitioner is therefore not entitled to habeas relief regarding this claim.

### B. Admission of 911 Call

Petitioner's second claim asserts that the recording of the 911 call made by Tayonna Botello was erroneously admitted because it was overly prejudicial. Respondent contends that the claim is not cognizable on federal habeas review because it involves a question of state evidentiary law.

It is well established that a federal habeas court will not "reexamine state-court determinations on state-law questions." *Ege v. Yukins*, 485 F.3d 364, 375 (6th Cir. 2007). "The

standard of review is therefore very deferential on such claims." *Hudson v. Lafler*, 421 F. App'x 619, 627 (6th Cir. 2011). An evidentiary ruling may violate due process only where it "is so egregious that it results in a denial of fundamental fairness." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Whether an error in the admission of evidence "constitutes a denial of fundamental fairness turns upon whether the evidence is material in the sense of a crucial, critical[,] highly significant factor." *Brown v. O'Dea*, 227 F.3d 642, 645 (6th Cir. 2000).

The state court determined that the 911 call recording was relevant because, as corroborating evidence, it made it more probable that the homicides occurred as Tayonna claimed. While Tayonna was obviously upset while reporting the brutal death of her parents, petitioner fails to show that the tendency of the evidence to cause unfair prejudice rose to the level of violating fundamental fairness. "[U]nfair prejudice does not mean the damage to a defendant's case that results from the legitimate force of the evidence; rather it refers to evidence which tends to suggest [a] decision on an improper basis." *United States v. Lawson*, 535 F.3d 434, 442 (6th Cir. 2008) (internal quotation marks and citation omitted). The 911 tape was probative of the crime's circumstances because it corroborated Tayonna's account, and it showed that she understood and could articulate what had happened. It was critical to the prosecutor's case and highly relevant to a central issue— Tayonna's credibility.

The tape's admission did not suggest an improper basis for the jury's decision. Therefore, its admission was reasonable and did not result in a denial of fundamental fairness. Petitioner's second claim does not provide a basis for granting habeas relief.

### C. Ineffective Assistance of Counsel

Petitioner's third claim asserts that his trial and appellate attorneys provided ineffective assistance of counsel. Petitioner argues that his trial counsel was ineffective for

failing to call Jeffrey Haugbook and Nina Funchess as defense witnesses; he alleges that they gave favorable testimony during petitioner's first trial. Both witnesses were called by the prosecution at the first trial and gave testimony implicating Derrick. There, they testified that they saw Derrick before and after the crime, that another man was with Derrick, and that petitioner was not with them. Petitioner asserts that his appellate counsel was ineffective for failing to raise this claim during his direct appeal. Respondent asserts that review of the claim is barred by petitioner's procedural default and, alternatively, that the claim is meritless.

Although respondent argues that review of this claim is barred because petitioner failed to raise it on direct appeal, because petitioner asserts that his appellate counsel was ineffective for failing to raise the claim during his direct appeal, the Court will examine this claim on the merits. *See Johnson v. Lee*, 578 U.S. \_\_\_, *5 (2016) (per curiam).

To prevail on his ineffective assistance of counsel claim, petitioner "must show both that his counsel's performance was deficient and that the deficient performance prejudiced the defense." *Hodges v. Colson*, 711 F.3d 589, 613 (6th Cir. 2013). To show deficiency, petitioner must establish that "counsel made errors so serious that [he] was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). To show prejudice, petitioner must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The Court can decide the claim on either prong. *Id.* at 697.

1. <u>Trial Counsel's Failure to Call Witnesses</u>

When an attorney fails to present evidence, the question is whether the unrevealed evidence "might well have influenced the jury's appraisal of [the petitioner's] culpability" and whether "the likelihood of a different result if the evidence had gone in is sufficient to undermine

confidence in the outcome actually reached." *Rompilla v. Beard*, 545 U.S. 374, 393 (2005) (internal quotation marks and citations omitted). Here, the proposed witnesses would have been presented to suggest that petitioner was not with Derrick at the crime scene. However, because there is substantial evidence indicating petitioner's presence at the crime scene, a fairminded jurist could reasonably find that petitioner fails to demonstrate prejudice under *Strickland*.

Petitioner's trial counsel conceded that petitioner was with Derrick at the victims' house, but argued that he did not aid in the commission of the offenses and left the house before the murders. Defense counsel was essentially forced to argue this because petitioner conceded to police that he was present at the house. Rule 5 Materials Ex. 27, p. 147. Additionally, Shantell Crankerfied testified that when she left the victims' house shortly before the murders, petitioner and Derrick were in the house's living room with Carson. *Id.* at Ex. 25, p. 18-19. In closing arguments, trial counsel's narrative was that petitioner was called to the house to facilitate a drug deal, and that when it became apparent that Derrick planned to rob Carson, petitioner escorted the children to the bathroom for safety's sake and then left. *Id.* at 42–47.

Contrary to petitioner's claim, Nina Funchess's testimony from the first trial was in fact read into second trial's record. Rule 5 Materials Ex. 28, pp. 140–192. She testified to being with Derrick and another man who was not petitioner at a Wal-Mart just before the murder, and described traveling with Derrick to Chicago after the crime. *Id.* at 154. Petitioner's counsel used this to support his defense that petitioner did not help plan the robbery, but was only called to the house by Derrick on the pretense of facilitating a drug deal. *Id.* at Ex. 29, pp. 32 36–37, 58–59. Counsel also insinuated Haugbook was perhaps involved in the plan. *Id.*

In light of the defense's theory and the substantial evidence that petitioner was at the crime scene, and because Funchess's prior testimony was read at the second trial, trial

12

counsel's decision to not call Funchess or Haugbook was not deficient. Funchess's prior testimony contained the facts the defense theory needed, and counsel may have decided not call Haugbook given his insinuation that Haugbook was involved. Counsel may have reasonably guessed that Haugbook would defend himself if called, and therefore may not have supported the defense narrative. Petitioner therefore has failed to demonstrate deficient performance.

Petitioner also fails to demonstrate *Strickland* prejudice. Calling Haugbook and Funchess to testify that petitioner was not with Derrick before and after the crime would not create a reasonable probability of a more favorable outcome. That assertion was already supported by Funchess's prior testimony. And their testimony would not have undermined Tayonna's testimony that petitioner forced her into the bathroom at gun point. Tayonna's testimony undermined petitioner's argument that he was merely present and not involved in the crime. Based on all the evidence presented, a fairminded jurist could find that petitioner was not prejudiced by the absence of the two defense witnesses. *See Ballinger v. Prelesnik*, 709 F.3d 558, 563 (6th Cir. 2013) (finding that a petitioner could not prejudice from counsel's failure to call an alibi witness where two eyewitnesses identified him as the perpetrator).

Because a fairminded jurist could reasonably reject petitioner's claim, he has failed to demonstrate entitlement to relief based on his ineffective assistance of counsel claim. And to the extent § 2254(d) deference does not apply to this claim, the Court finds that petitioner fails to demonstrate either deficient performance or a reasonable probability of a more favorable trial result had counsel called these two witnesses at trial.

2. Appellate Counsel's Failure to Raise Claim on Direct Appeal

Finally, petitioner asserts that his appellate counsel was ineffective for failing to raise the ineffective assistance of trial counsel claim. "[B]y definition, appellate counsel cannot

13

be ineffective for a failure to raise an issue that lacks merit." *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001). The Court has already determined that the underlying claim is meritless. Consequently, this claim is also meritless.

## IV. CERTIFICATE OF APPEALABILITY

Before petitioner may appeal this Court's decision, "a circuit justice or judge" must issue a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Because the Court has rejected petitioner's habeas claims on the merits, to satisfy § 2253(c)(2), petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted).

The Court finds that reasonable jurists could debate petitioner's third claim—i.e., ineffective assistance of trial counsel. The Court therefore grants a certificate of appealability with respect to that claim. Beyond that, however, the Court finds that reasonable jurists would not debate whether petitioner's first and second claims merit relief. Accordingly, a certificate of appealability will not be granted with respect to those claims.

Finally, if petitioner chooses to appeal this decision, he may proceed *in forma pauperis* because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V. CONCLUSION

Accordingly,

IT IS ORDERED that the application for a writ of habeas corpus is denied.

IT IS FURTHER ORDERED that a certificate of appealability is granted with respect to the third claim, but denied with respect to the first and second claims.

IT IS FURTHER ORDERED that petitioner is granted leave to appeal *in forma pauperis*.

                                                            s/Bernard A. Friedman
                                                            BERNARD A. FRIEDMAN
                                                            SENIOR UNITED STATES DISTRICT JUDGE

Dated: June 22, 2017
       Detroit, Michigan